**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

VICTOR EARL,                              )
           Plaintiff,                 )
                          )
        v.                               )     CAUSE NO.: 2:07-CV-310-PRC
                          )
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security           )
Administration,                           )
           Defendant.                 )

**OPINION AND ORDER**

       This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Victor Earl on

September 11, 2007; and a Plaintiff's Opening Brief [DE 14], filed on January 21, 2008. Plaintiff

requests that the Court reverse, or in the alternative, remand the Administrative Law Judge's

decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). On March 10, 2008,

the Commissioner filed a Memorandum in Support of the Commissioner's Decision. On March 24,

2008, Plaintiff filed a Reply to the Memorandum in Support of the Commissioner's Decision. For

the following reasons, the Court grants Plaintiff's request and remands this matter for further

proceedings consistent with this Opinion and Order.

**PROCEDURAL BACKGROUND**

       On June 9, 2003, Plaintiff filed an application for DIB, alleging a disability since November

2, 2002. Plaintiff's application was initially denied on September 3, 2003, and also upon

reconsideration on January 6, 2004. On January 29, 2004, Plaintiff filed a timely request for a

hearing, which was held, via video, on July 15, 2005. Plaintiff and his attorney Charles Marlowe

appeared at a teleconference center in Gary, Indiana, before Administrative Law Judge Daniel Dadabo ("the ALJ"), who was in Evanston, Illinois. Vocational Expert James Radke ("the VE") appeared and testified at the hearing. Plaintiff's mother, Ruth Earl, provided a proffer of testimony at the hearing. Following the hearing, on July 21, 2005, Plaintiff's attorney submitted additional evidence, which clarified a statement made by Dr. John Klemme regarding Plaintiff's Residual Functional Capacity ("RFC"). The ALJ also requested, received, and evaluated a psychological consultative exam and mental RFC assessment of Plaintiff conducted post-hearing.

In a decision dated January 25, 2006, the ALJ denied Plaintiff's application, finding that he did not have a disability within the meaning of the Social Security Act and that he could perform other jobs, which exist in significant numbers in the national economy. On January 27, 2006, Plaintiff filed a Request for Review with the Social Security Administration Appeals Council. On July 27, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

**FACTS**

**A. Background**

Plaintiff was forty-three years old at the time of the ALJ's January 25, 2006 decision. Plaintiff has a high school education. His professional experience includes being a member of the National Guard reserves and work as a security guard and a temporary laborer for the United States

Postal Service.  Plaintiff represents that his health problems began in 2002 due to left knee and foot problems, a left rotator cuff injury, and a right hand knot.

### B. Medical Evidence

Plaintiff consistently complained of pain in his left foot and knee and right wrist.  The record reflects that Plaintiff suffered a right ankle fracture in 1996, underwent hospitalization for pneumonia in 1996, underwent x-rays that showed subarticular sclerosis with moderate joint space narrowing, and underwent left knee arthroscopy repair for medial meniscal tear and medial cartilage damage in 1997.[1]

1.    *Dr. Bautista*

On August 19, 2003, Teofilo Bautista, M.D., examined Plaintiff.  Dr. Bautista found that Plaintiff had tenderness and swelling in his left knee but no swelling or tenderness in his right knee. Dr. Bautista observed Plaintiff to walk with a cane and with limping gait due to knee pain, and observed that he was unable to walk heel to toe, and could only squat slightly and very briefly.  Dr. Bautista found Plaintiff's muscle strength to be 5/5 in both upper extremities, 5/5 in the right lower extremity, and 4/5 in the left lower extremity.  Dr. Bautista found that Plaintiff, with regard to his left knee, had a history of a torn meniscus, status post arthroscopic surgery, and degenerative joint disease.

2.    *Dr. Bastnagel*

On August 28, 2003, State Agency physician Dr. L. Bastnagel completed an RFC assessment of Plaintiff and diagnosed degenerative joint disease in the left knee.  Dr. Bastnagel found that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds,

---

[1]In 1997, Plaintiff applied for DIB but was denied in a 1998 decision that the Appeals Council declined to review.

stand and/or walk about six hours in an eight hour workday, sit for a total of about six hours in an eight hour workday, and could engage in unlimited pushing and/or pulling. Dr. Bastnagel opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; could occasionally kneel, crouch, and crawl; and could frequently balance and stoop.

3.    *Dr. Lopez*

On November 4, 2004, Dr. A. Lopez completed an RFC assessment of Plaintiff. Dr. Lopez found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight hour workday, sit for a total of about six hours in an eight hour workday, and could engage in limited pushing and/or pulling with his lower extremities. Dr. Lopez opined that Plaintiff could occasionally climb ramps and stairs, stoop, and crouch; and should never climb ladders, ropes, or scaffolds, and never balance, kneel, or crawl. Dr. Lopez further opined that Plaintiff could engage in unlimited reaching, handling with both arms, and could engage in unlimited fingering and feeling with his right arm but only limited fingering and feeling with his left arm.

4.    *Dr. John Klemme*

Plaintiff saw John W. Klemme, M.D., at the VA Hospital from 2003 through 2005. In a report dated April 21, 2005, Dr. Klemme opined that Plaintiff had a maximum ability to lift and carry less than ten pounds for no more than a third of an eight hour work day on an occasional or frequent basis. Dr. Klemme found that Plaintiff had a maximum ability to stand and walk less than two hours in an eight hour work day, and could sit for less than two hours in the same day. Dr. Klemme opined that Plaintiff could sit, stand, or walk for a maximum of 90 minutes before changing

4

positions. Dr. Klemme concluded that Plaintiff could occasionally twist, bend, crouch, climb stairs, and climb ladders. Dr. Klemme diagnosed Plaintiff with a rotator cuff abnormality.

In a treatment note dated May 17, 2005, Dr. Klemme noted that Plaintiff was on a ten pound weight limit and could not engage in any strenuous activities until being reevaluated by his orthopedist.

5.    *Dr. Stephen M. Gryzlo*

On April 21, 2005, Plaintiff saw Stephen M. Gryzlo, M.D.  Dr. Gryzlo, an orthopedic attending physician, found that Plaintiff maintained 4/5 strength, and had no effusions in his knee. Dr. Gryzlo recommended that Plaintiff perform exercises and return in six months.

6.    *Dr. Caryn Brown*

On October 11, 2005, Plaintiff saw Caryn Brown, Psy.D., having been referred by the Disability Determination Office for the Social Security Agency.  Dr. Brown noted that Plaintiff's symptoms related to his then pending disability appeal.  Functionally, Plaintiff exhibited appropriate affect and logical thought processes and was able to sustain concentration and attention with only mild hindrance.  Dr. Brown assigned Plaintiff a Global Assessment of Function ("GAF") rating of 65[2], and diagnosed Plaintiff with an adjustment disorder with depressed mood, indicating that he experienced minimal social and occupational restriction due to mental impairment.

---

[2] A GAF score of 65 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, at 34 n.3 (4th Ed. 2000).

**C. Plaintiff's Hearing**

On July 15, 2005, the ALJ convened the video conference hearing at which Plaintiff, his attorney Charles Marlowe, the VE, and Plaintiff's mother Ruth appeared. Plaintiff testified, indicating that he had been unable to do any kind of work since 2002 due to pain in his right foot, knee, and shoulder. Plaintiff testified that he could be on his feet for "a half an hour at the most," that he could sit for four hours, that he used a cane and wore a wrist brace, and that because of a "knot" on the side of his wrist, he could not lift using the wrist, and experienced pain when moving it "from side to side." R. at 52-53. Plaintiff stated that he would feel most comfortable lifting and carrying five pounds occasionally and that he had to avoid twisting, grasping, or handling due to pain in his upper extremities. Plaintiff further testified that he had not driven in three years and that for the past three or four years, he had spent a typical day laying down or with his leg propped up to prevent swelling. Plaintiff explained that his mother took care of his daily chores because when he stood, his knee gave out.

Following Plaintiff's testimony, the VE testified. The VE stated that Plaintiff's past work ranged between light and medium exertion and was semi-skilled in nature. The VE also stated that based on Plaintiff's restrictions, he would be incapable to go back to his past relevant work, however, there were unskilled, sedentary jobs that Plaintiff could perform such as positions as an office clerk (1,900 positions in the Chicago metropolitan area), a communication equipment operator (3,000 positions in the Chicago metropolitan area), and a receptionist. The ALJ then asked the VE what kind of jobs a person could perform if, during an eight-hour day, the most the person could sit would be 90 minutes at a time, could stand for only 90 minutes at a time, could only walk for 90 minutes at a time, and had reaching, handling, fingering, feeling, pushing, and pulling restrictions.

6

The VE opined that the sitting requirement would not affect any of the listed jobs, that the sit-stand option would cut the available receptionist jobs in half, and that the reaching, handling, fingering, feeling, pushing, and pulling restrictions would have a minimal impact on the office clerk positions only.

The ALJ then posed another hypothetical to the VE, this time describing a person with all of the same restrictions as before except that this person needs to lie down to elevate his legs, and the elevation level must be at least two and a half feet and must occur four hours a day.  The VE stated that these restrictions would be incompatible with competitive employment.  The ALJ then returned to his first hypothetical and asked whether a person who had to miss work approximately twice a month could sustain employment.  The VE responded that in today's job market, that restriction would probably be incompatible with continued employment.

### D. ALJ's Decision

The ALJ found that Plaintiff had not engaged in any substantial gainful activity since his alleged 2002 disability onset.  The ALJ concluded that Plaintiff had the following severe, medically determinable impairments:

> Status post 1996 right ankle fracture; early left ankle, left hind foot, left first metatarsal phalangeal joint and left knee degenerative changes, with a history of December 1997 left knee arthroscopy and September 2003 left lateral femoral condyle exostosis; left shoulder impingement, October 2003 right wrist drop, cerebellar degeneration, polysubstance abuse, 1999 hospitalization for diffuse ileus, pancreatitis and left lower lobe pneumonia, gastroesophageal reflux and depression.

R. at 23.

The ALJ found that Plaintiff's impairments, either singly or in combination, were not severe enough to meet a listed impairment.  The ALJ found that Plaintiff had the RFC for sedentary, unskilled work that did not involve lifting more than ten pounds, sitting more than 75 minutes,

standing more than ten minutes, or walking more than five minutes during each 90 minute period in an eight-hour day.  Additionally, the ALJ found that Plaintiff would be subject to occasional twisting, stooping, crouching, or climbing, and only occasional reaching, handling, fingering, or feeling with the non-dominant left upper extremity.  Based on his RFC finding, the ALJ found that there were a number of jobs in the national economy that Plaintiff could perform, such as office clerk, receptionist, and communications equipment operator.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported

by substantial evidence and under the correct legal standard.  *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).  If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings."  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits."  *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).  The ALJ must build an "accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Young v. Barnhart*, 362 F.3d 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

9

To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 404.1520(a)(4).  The steps are:

(1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe?  If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work?  If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(I)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC.  "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations."  *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all relevant evidence

of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving

steps one through four, whereas the burden at step five is on the ALJ.  *Id.* at 1000; *see also*

*Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).


## ANALYSIS

Requesting reversal or remand, Plaintiff argues in his opening brief that: (a) the ALJ failed

to properly consider whether Plaintiff's conditions met or equaled an impairment listed in Appendix

1 of 20 C.F.R. Subpt. P; (b) the ALJ found that Plaintiff suffered from a severe right wrist

impairment but improperly failed to assess a right upper extremity limitation; (c) the ALJ improperly

rejected the opinion of Dr. Klemme, Plaintiff's treating physician; (d) the ALJ failed to ask a

complete hypothetical; (e) the ALJ failed to inquire about, identify, or resolve conflicts between the

VE's testimony and the Dictionary of Occupational Titles ("DOT").  The Commissioner disputes

each of Plaintiff's arguments and contends that the ALJ's decision is supported by substantial

evidence.

## A.  Impairment Listings

Framed as an argument that the ALJ performed a generally deficient analysis at Step Three

of the sequential analysis, Plaintiff contends that the ALJ did not properly consider Plaintiff's

conditions in finding that his limitations did not meet a listed impairment.  Plaintiff focuses his

argument on one listed impairment, Listing 1.02–Major dysfunction of a joint, which refers to

1.00B.2, a section that addresses the ability to ambulate.  The Commissioner contends that the ALJ's

finding that Plaintiff did not meet the requirements of a listed impairment is supported by substantial

evidence.

At Step Three, plaintiff bears the burden to prove that his impairments meet the requirements of a listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). An applicant must satisfy all of the criteria in a listing in order to receive an award of benefits at Step Three. *See Maggard*, 167 F.3d at 380 (citing *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 2003); *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991)). However, remand may be necessary where an ALJ fails to explicitly refer to a relevant listing and goes on to perform a perfunctory analysis of the claimant's limitations. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name *and* offer more than a perfunctory analysis of the listing") (emphasis added) (citations omitted); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2003); *Scott*, 297 F.3d at 595-96. A court is primarily concerned with tracing the ALJ's logic and reasoning. The United States Court of Appeals for the Seventh Circuit requires that the ALJ "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Pope*, 998 F.2d at 481.

Here, Plaintiff contends that the ALJ dismissed his qualification under Listing 1.02 without sufficient consideration. Section 1.00B.2, cited in Listing 1.02, provides:

> "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)"

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B.2.b(1).

In his Step Three finding, the ALJ reasoned:

"Neither [Plaintiff's] upper nor lower extremity limitations have resulted in the significant degree of ambulatory and/or fine or gross manipulative dysfunction described at section 1.00B.2. of Appendix 1."

R. at 23.

Plaintiff interprets Section 1.00B.2.b(1) to provide that if a claimant has a hand limitation, and requires use of a cane, he may equal Listing 1.02. Plaintiff argues that the ALJ failed to adequately address why Plaintiff's conditions did not meet the Listing. Upon review of the ALJ's decision, although he did not specifically discuss Plaintiff's use of a cane, he did explicitly reference Section 1.00B.2, finding that Plaintiff did not meet the standard for an impairment resulting from his limited ability to ambulate. Also, the ALJ considered medical evidence in the form of opinions of several State Agency physicians who stated that Plaintiff's impairments did not meet or equal a listing. For example, Dr. Bastnagel completed an RFC assessment Form SSA-831 and indicated that Plaintiff did not have an impairment that met or equaled a listing. In addition, Dr. Lopez concluded in a Form SSA-831 that Plaintiff did not have an impairment that met a listing.

Seventh Circuit precedent dictates that a physician's completion of a Form SSA-831 "conclusively establish[es] that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" *Scheck*, 357 F.3d at 700 (quoting *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989)). Additionally, "Since the state agency physician was a physician designated by the Secretary to determine medical equivalence, the ALJ may rely upon the physician's opinion to determine eligibility." *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990) (citing *Waite v. Bowen*, 819 F.3d 1356, 1360 (7th Cir. 1987)).

13

In this case, the Court finds that the ALJ was entitled to rely on the findings contained in the Forms SSA-831 completed by the State Agency physicians. The Forms SSA-831 support the ALJ's finding that Plaintiff's "impairments, though 'severe' within the meaning of the Regulations are not 'severe' enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." R. at 23. Plaintiff, whose burden it is to establish that he met a Listing, failed to cite any medical evidence, or otherwise formulate an argument in support of his claim that he meets Listing 1.02. Rather, he points to alleged shortcomings in the ALJ's analysis. The Court finds that Plaintiff's efforts fall short of establishing a listed impairment and, based on the foregoing, finds that the ALJ's conclusion as to Plaintiff not meeting a listed impairment is supported by substantial evidence.

### B. Plaintiff's right wrist

Considering Plaintiff's limitation in his right wrist, the ALJ found that Plaintiff had a severe impairment due to an "October 2003 right wrist drop." R. at 23. Plaintiff argues that the ALJ's failure to subsequently consider limitations caused by the right wrist drop warrants reversal or remand.[3] The Commissioner argues that the ALJ did in fact consider Plaintiff's limitations in his right upper extremity, and did so in accordance with Social Security regulations.

In his RFC finding, the ALJ assessed limitations on Plaintiff's ability to lift, restricting him to lift no more than ten pounds. The ALJ's inclusion of the lifting restriction in his RFC finding evinces consideration of a right upper extremity limitation. In addition, in his hypotheticals to the VE, the ALJ included a limitation that the hypothetical individual could only lift ten pounds. Plaintiff failed to cite any medical evidence in the record suggesting that his right wrist caused any

---

[3]Plaintiff failed to city any law in support of his argument, and did not raise the argument in his reply brief.

limitation beyond the limitation included in the ALJ's RFC finding.  The Court finds that based on a review of the record, the ALJ did consider Plaintiff's right wrist injury and the resulting right upper extremity limitations.

### C.  Dr. Klemme's opinion

Plaintiff next asserts that the ALJ erred in rejecting treating physician Dr. Klemme's opinions that Plaintiff was unable to lift ten pounds and that he would likely be absent from work two times per month.  The Commissioner argues that the ALJ adopted several of Dr. Klemme's opinions, and that with regard to those portions of Dr. Klemme's medical opinion that the ALJ rejected, he provided sound rationale for doing so.

When evaluating medical opinions, the ALJ should generally give greater weight to treating physicians than non-examining physicians.  *See* 20 C.F.R. § 416.927(d)(1).  An ALJ must "give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence."  SSR 96-2p at *2.  If the ALJ does not give a treating source's opinion controlling weight, he must explain the weight he accorded the opinion and provide reasons in support of his finding.  *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p at *2.

In his decision, the ALJ rejected Dr. Klemme's findings that Plaintiff could not lift ten pounds and that he would be absent from work approximately twice a month.  In rejecting Dr. Klemme's opinion as to Plaintiff's ability to lift ten pounds, the ALJ highlighted conflicting findings in Dr. Klemme's reports.  The ALJ explained that in April 2005, Dr. Klemme opined that Plaintiff could lift and carry less than ten pounds, but on May 17, 2005, Dr. Klemme found Plaintiff's weight

15

limit to be ten pounds.[4]   Thus, in one month Dr. Klemme came to different conclusions as to

Plaintiff's ability to lift ten pounds.  The decision of which limitation to adopt among conflicting

physician statements is within the ALJ's discretion.  *See Ozier v. Barnhart*, No. 03 C 2988, 2004

WL 2038540, at *6 (N.D. Ill. Aug. 11, 2004).  Here, the ALJ acted within his discretion to rely on

Dr. Klemme's more recent opinion that Plaintiff was capable of lifting ten pounds.

In addition, the ALJ relied on other medical sources in concluding that Plaintiff could lift ten

pounds.  In an RFC capacity assessment form dated August 28, 2003, Dr. Bastnagel found that

Plaintiff could occasionally lift and carry twenty pounds and could frequently lift and carry ten

pounds.  Further, in an April 2005 consultation regarding Plaintiff's general health, Dr. Stephen

Gryzlo found that Plaintiff should perform exercises and return in six months.  According to the

ALJ, this recommendation suggested that Plaintiff did not face "a critical, pain-intensive medical

process." R. at 24.  Also, the ALJ reasoned that after several invasive knee procedures in the 1990's,

Plaintiff returned to work and performed work above the level of sedentary, again evidencing a less

than critical limitation.  Finally, Plaintiff stated during his hearing testimony that in August 2003,

he could lift ten pounds.  The Court finds that based on the evidence of record, the ALJ had

sufficient cause to reject Dr. Klemme's opinion that Plaintiff was unable to lift ten pounds.

The ALJ also rejected Dr. Klemme's opinion that Plaintiff would need to be absent from

work approximately twice a month.  The ALJ specifically stated that he could not rely on Dr.

Klemme's opinion because the findings were "speculative" and "not well supported." R. at 25.  Dr.

---

[4]In his decision, the ALJ mistakenly wrote that the May 2005 opinion came one month before Dr.
Klemme's finding that Plaintiff could not lift ten pounds.  The May 2005 opinion in fact came one month after Dr.
Klemme's finding that Plaintiff could not lift ten pounds.  Despite this error, the ALJ correctly noted that one month
separated Dr. Klemme's opinions.  The ALJ's mistake as to the chronological order of Dr. Klemme's opinions will
not affect the outcome in deciding this issue.

Klemme's finding consists of a checkmark indicating that Plaintiff would have to miss work "[a]bout twice a month" due to his impairments. R. at 317. Dr. Klemme failed to specify which impairment would cause Plaintiff to miss work or the specific reason Plaintiff would need to miss work–i.e., treatment, rest, or other justification. Rather than Dr. Klemme's opinion, the ALJ relied on the opinion of the consultative psychologist, Caryn Brown, who concluded that Plaintiff had no significant limitations in his ability to understand, remember, and carry out simple instructions and could psychologically function at an adequate level most of the time. The Court notes that other than Dr. Klemme, no other examining physician concluded that Plaintiff's physical condition would require him to miss two days of work per month.

Because "[a]n ALJ need not give controlling weight to a treating physician's opinion if it is not supported by objective clinical findings," *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) (citations omitted), the Court finds that it was reasonable for the ALJ to not rely on Dr. Klemme's opinion regarding Plaintiff's need to miss work. Dr. Klemme's opinion is unsupported by medical findings. The ALJ did credit portions of Dr. Klemme's opinion within his RFC, finding that Plaintiff's maximum ability to sit or stand was less than two hours. The ALJ also recognized Dr. Klemme's opinion that Plaintiff could only occasionally twist, stoop, crouch, or climb. The Court finds that the ALJ's decision to rely on portions of Dr. Klemme's opinion, while disregarding other portions, is supported by substantial evidence.

### D. The ALJ's hypotheticals

Plaintiff argues that the ALJ failed to ask the VE a complete hypothetical that included all Plaintiff's limitations and therefore the ALJ's questioning was insufficient. The Commissioner contends that the ALJ's hypotheticals were complete and consistent with the final RFC.

17

To the extent that the ALJ relies on the VE's testimony, the hypothetical posed to the VE must include "all relevant limitations from which the claimant suffers" if they are supported by the medical evidence of record. *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) (citing *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994)).

In his decision, the ALJ stated that Plaintiff had the following limitations:

> Status post 1996 right ankle fracture; early left ankle, left hind foot, left first metatarsal phalangeal joint and left knee degenerative changes, with a history of December 1997 left knee arthroscopy and September 2003 left lateral femoral condyle exostosis; left shoulder impingement, October 2003 right wrist drop, cerebellar degeneration, polysubstance abuse, 1999 hospitalization for diffuse ileus, pancreatitis and left lower lobe pneumonia, gastroesophageal reflux and depression.

R. at 23. In his questioning of the VE, the ALJ first asked the VE what kind of unskilled, sedentary jobs are available in the economy. The VE responded that there were office clerk, communication equipment operator, and receptionist positions available. The ALJ then posed a hypothetical to the VE asking what kind of jobs would be available if a person had a maximum ability to lift ten pounds, could stand or sit less than two hours, had to sit for five minutes after standing for 90 minutes, the person did not need to randomly lie down, but did have to shift at will, the person could occasionally twist, stoop, crouch, climb stairs, and ladders, and would be restricted in reaching, handling, fingering, feeling, pushing, and pulling because of a rotator cuff abnormality. The ALJ added that the person could sit, stand, and walk for only 90 minutes at a single time.

Plaintiff argues that the hypotheticals were inconsistent with the ALJ's limitation findings because the ALJ did not "provide the specific left upper extremity limitation to occasional reaching, handling, fingering, or feeling." Pl.'s Br. at 6. However, the ALJ did incorporate these limitations into the hypothetical when he added "reaching, handling, fingering, feeling, pushing and pulling are going to be affected because of the rotator cuff abnormality." R. at 73. When the VE responded to

18

this hypothetical, he acknowledged that the limitations referred to Plaintiff's restrictions to his rotator cuff and explained to what extent the limitations would impact potential employment positions.

Plaintiff also argues that the ALJ left out the fact that Plaintiff used a cane and thus posed an incomplete hypothetical. Seventh Circuit precedent requires that the hypothetical incorporate all relevant limitations. *See Kasarsky*, 335 F.3d at 543. Here, the hypotheticals incorporated Plaintiff's mobility limitation. That the ALJ failed to include Plaintiff's use of a cane as an element of his hypothetical to the ALJ does not itself render his hypothetical deficient. Rather, the ALJ included functional mobility limitations in his hypothetical by including Plaintiff's limited ability to stand and walk. When comparing Plaintiff's limitations established in the medical record to the ALJ's hypothetical, it appears that all limitations were posed in the hypothetical to the VE. Therefore, the Court finds that the ALJ's hypotheticals were complete and consistent with Plaintiff's limitations.

### E.  VE questioning, SSR 00-4p, and the DOT

For his final argument, Plaintiff contends that the ALJ failed to verify that the VE's testimony was consistent with the DOT, as is required by SSR 00-4p. The Commissioner contends that there are no conflicts between the VE's testimony and the DOT, and as a result, the ALJ's decision is supported by substantial evidence.

SSR 00-4p requires:

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

19

SSR 00-4p, 2000 WL 1898704 at *4.  The regulations allow the ALJ to rely on either the VE or the DOT when making a determination regarding available work for the claimant.  *See* 20 C.F.R. § 404.1566(d), (e) (2007).  But if the VE's testimony and the DOT conflict, the ALJ must first obtain a reasonable explanation for the conflict.  *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).  Furthermore, before the ALJ can rely on the VE's testimony as substantial evidence, he must make the SSR 00-4p inquiry as to consistency with the DOT and elicit a response as to any discrepancies.  *See id.* (citing *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)).  SSR 00-4p places the burden of making the DOT inquiry on the ALJ, not the claimant.  *See id.*

In *Prochaska*, the ALJ elicited testimony from the VE as to whether a hypothetical person with certain limitations could meet the requirements of various jobs.  The ALJ failed to then ask the VE whether his testimony was consistent with the DOT.  The plaintiff argued that the jobs listed by the VE in response to the hypothetical were inconsistent with his limitations and did not match the DOT.  The court held that SSR 00-4p requires the ALJ to determine whether the VE's testimony is consistent with the DOT and remanded the case on that issue.  *See Prochaska*, 454 F.3d at 735.

In this case, the ALJ ended the hearing without questioning the VE as to whether his testimony was consistent with the DOT.  The ALJ did refer to the DOT at the hearing, stating, "Now it sounds like he performed it and the way that it's normally described in the Dictionary of Occupational Titles, the jobs pretty much conformed, correct?"  R. at 70.  Though the ALJ mentioned the DOT, he referred to the Dictionary with regard to Plaintiff's past employment.  The necessary inquiry concerns those jobs that the VE found Plaintiff was able to perform at the time of the hearing.  The ALJ's reference to the DOT with regard to Plaintiff's past work does not satisfy the inquiry required by SSR 00-4p.

Opposing remand, the Commissioner contends that the ALJ found "no apparent conflict" between the VE's testimony and the DOT, and thus any failure to make a particular inquiry was harmless error that does not require further consideration. Def.'s Resp. Br. at 11. Also, the Commissioner points out that the VE testified that he based his employment findings on Occupational Statistics Quarterly, a publication that uses "some DOT nomenclature." R. at 78. But in his response, the Commissioner concedes that the "ALJ did not expressly inquire at the administrative hearing whether the vocational expert's testimony was consistent with the DOT . . ." Def.'s Resp. Br. at 1-2. Despite the Commissioner's arguments that the ALJ's failure to inquire as to the consistency of the VE's testimony with the ALJ constitutes harmless error, his admission that the DOT question was not asked shows that the ALJ failed to satisfy his duty, as explained in *Prochaska*. The VE's reliance on Occupational Statistics Quarterly does not satisfy SSR 00-4p, which specifically identifies the DOT as the proper source for determining any conflict with the VE's testimony.

As often is the case when the ALJ fails to inquire as to the consistency between the VE's testimony and the DOT, Plaintiff points to purported inconsistencies between the VE's conclusions and the DOT. The VE concluded that Plaintiff could perform work as a receptionist. Plaintiff identifies a job title of "receptionist" in the DOT that requires an employee be capable of frequent reaching and handling. *See* DOT Listing 237.367-038. Plaintiff contends that the requirements of the receptionist position are inconsistent with Plaintiff's abilities according to the ALJ's RFC finding, according to which Plaintiff was limited to occasional reaching and handling. The VE also found Plaintiff capable of performing work as an office clerk. According to the DOT, an office clerk position requires ability to frequently reach, handle, and finger. *See* DOT Listing 209.562-010.

Plaintiff points to the ALJ's RFC finding again, and argues that the DOT's requirements for an office clerk are incongruent with the ALJ's RFC finding that Plaintiff could only occasionally reach, handle, and finger.  If complied with, SSR 00-4p can avoid or explain conflicts such as these.

In a final attempt to avoid remand based on a failure to comply with SSR 00-4p, the Commissioner argues that Plaintiff's argument is not timely.  However, pursuant to Seventh Circuit precedent, "[the claimant] was not required to raise the [DOT consistency] issue at the hearing because . . . ruling [SSR 00-4p] places the burden of making the necessary inquiry on the ALJ." *Prochaska,* 454 F.3d at 735.  The ALJ's duty to inquire into the consistency between the VE's testimony and the DOT is affirmative.  *See id.*  Thus, the fact that Plaintiff failed to raise the issue at the hearing does not make his argument now untimely because the burden to raise the issue originally belonged to the ALJ.  *See id.*  As a result, the Court is not persuaded by the Commissioner's timeliness argument.  The Court thus remands this matter and instructs the ALJ to receive an answer from the VE regarding whether the requirements of jobs identified by the VE are consistent with the DOT, and if they are inconsistent as Plaintiff contends, to resolve those inconsistencies.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ failed to comply with SSR 00-4p when questioning the VE.  Therefore, the Court **GRANTS** the Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14] and **REMANDS** this matter for further proceedings consistent with this Order.

SO ORDERED this 14th day of May, 2008.

s/ Paul R. Cherry
_____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record